**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION**

| | | |
|---|---|---|
| HENYERSON JESÚS TORRES ANTÚNEZ,<br><br>Petitioner,<br>v.<br><br>JASON JOHNSON, in his official capacity as Sheriff of the Greene County Jail, *et al.*<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 26-03751-CV-S-BP |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner entered this country in October 2024. He was later stopped for speeding in July 2026 and has been detained by the Department of Homeland Security ("DHS") ever since. Pending is his Petition for Writ of Habeas Corpus, in which he argues the Due Process Clause requires that he be released. The Court concludes the Petition should be **DENIED**.

## I. BACKGROUND

As stated above, Petitioner entered the country in October 2024 and was granted parole into the country. (Doc. 1, ¶¶ 1, 18.) In April 2025 he applied for asylum, (Doc. 1, ¶ 19), and his application is still pending. In July 2026 he was stopped for speeding in Greenfield, Indiana, and was turned over to DHS's custody, which is detaining him in the Greene County (Missouri) Jail. (Doc. 1, ¶¶ 22-24.)

Petitioner originally expressed uncertainty as to whether his parole specified an expiration date. (*E.g.*, Doc. 1, ¶¶ 2, 36.) However, Respondents[1] presented documentation establishing

[1] While Petitioner is in the physical custody of the Greene County Sheriff, he is detained at the direction of various federal officials and agencies. References to "Respondents" in this Order are references to those federal officials and agencies.

Petitioner's grant of parole expired on April 24, 2026, (Doc. 4-1), and Petitioner now "accepts [that date] as the expiration date of the original grant" of his parole. (Doc. 5, p. 2.)

With this background, the Court can consider Petitioner's claims, which are set out below.

## **II. DISCUSSION**

### **A. Count I**

In Count I, Petitioner alleges that Respondents did not follow proper procedures in terminating his parole. However, that claim was contingent on his belief that his parole did not include an expiration date. (*See* Doc. 1, ¶ 36; Doc. 5, p. 1.) The fact that the grant of parole expired in April 2026 is significant. According to relevant regulations,

> [p]arole shall be automatically terminated *without written notice* . . . at the expiration of the time for which parole was authorized, and . . . the alien shall be processed in accordance with paragraph (e)(2) of this section *except that no written notice shall be required*.

8 C.F.R. 212.5(e)(1) (emphasis supplied). Thus, Petitioner's parole terminated automatically, without the need for written notice or an explanation, on the date specified when his parole was granted. Therefore, relief on Count I is not warranted.

### **B. Count II**

In Count II Petitioner contends his detention violates the Due Process Clause. Respondents argue that Petitioner's detention is authorized by 8 U.S.C. § 1225, which (in § 1225(b)(2)(A)) provides that an alien in Petitioner's circumstances "shall be detained" pending the conclusion of removal proceedings. *See also Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Petitioner does not dispute this understanding of § 1225(b)(2)(A). He also does not challenge the process that was utilized to determine that he is an alien seeking admission or whether he is entitled to be admitted into the country. Instead, he argues that § 1225 cannot be applied to him because he was granted

parole, and Respondents cannot "take back" the liberty he was granted. (*See*, *e.g.*, Doc. 1, ¶ 40; Doc. 5, pp. 5-6.)[2] The Court disagrees.

An alien seeking to enter the country "has only those rights regarding admission that Congress has provided by statute." *Department of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). This is because "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). This principle has formed the basis for many Supreme Court decisions upholding the detention of aliens who are not admitted into the country. For instance, in *Demore v. Kim*, 538 U.S. 510 (2003), the Court addressed 8 U.S.C. § 1226(c), which requires the Attorney General to take into custody any alien who has been convicted of one or more specified crimes. The petitioner in that case "argued that his detention under § 1226(c) violated due process because [there was] no determination that he posed either a danger to society or a flight risk." *Demore*, 538 U.S. at 514. In rejecting this claim, the Court noted that it "has firmly and repeatedly endorsed" the proposition that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Id*. at 521 (2003) (quotation omitted). In particular, the Court "has recognized detention as a constitutionally valid aspect of the deportation process." *Id*. at 523. The Court also noted it had previously upheld statutes and policies restricting the release of aliens while removal/deportation proceedings were pending, even though a citizen or someone permitted to enter the country could not be automatically detained. *Id*. at 523-24 (citing cases).

---

[2] Petitioner denies that he is claiming entitlement to a bond hearing, (Doc. 5, p. 3), thus further confirming he is claiming a right to be released immediately.

The Eighth Circuit applied *Demore* in *Banyee v. Garland*; in that case, the petitioner had been detained for a year pursuant to § 1226(c) while awaiting a final decision regarding whether he would be removed. He argued "the lengthy detention violated due process, at least in the absence of individualized review." 115 F.4th 928, 930-31 (8th Cir. 2024). In other words, notwithstanding the Supreme Court's decision in *Demore*, the petitioner argued that he had a liberty interest in his freedom, such that due process required he be considered for bond after he had been detained for a certain period of time. The Eighth Circuit rejected this claim, noting that *Demore* was merely the latest case in which the Supreme Court had (1) upheld categorical and mandatory rules applicable to the detention of aliens and (2) declined to find the Constitution required individualized evaluation. *Id*. at 931-33. The Eighth Circuit further concluded that Supreme Court precedent "leave[s] no room for a multi-factor 'reasonableness' test" and, instead of applying a "*Mathews*[*v. Eldridge*]-type inquiry," *Demore* "opted for a bright-line rule instead: the government can detain an alien for as long as deportation proceedings are still pending." *Id*. at 933 (emphasis and quotation omitted).[3]

Petitioner argues that he has acquired a liberty interest in remaining free because he was paroled into the country, (*e.g.*, Doc. 5, p. 4), but Petitioner's parole was limited: it expired, by its

[3] While Petitioner invokes the Supreme Court's decision in *Mathews v. Eldridge*, 424 U.S. 319 (1976), (Doc 5, pp. 5-6), the Court does not believe the case is relevant here. First, as stated earlier, Petitioner is claiming he has a right to be released and denies that he is asserting he has a right to a bond hearing. Second, in addition to *Demore*'s decision that *Mathews* does not apply, the Court notes that *Mathews* is typically utilized to determine whether the procedures used satisfy procedural due process. *E.g.*, *Medina v. California*, 505 U.S. 437, 443 (1992) ("In *Mathews*, we articulated a three-factor test for evaluating procedural due process claims[.]"). Moreover, *Mathews* requires consideration of, among other things, the risk of erroneous deprivation and the value of additional procedures in preventing errors, 424 U.S. at 335, but these inquiries are of limited value unless it is first established that there is a substantive right at issue. Put another way, an erroneous deprivation can occur only if Petitioner is correct in contending he has a liberty interest—and applying *Mathews* presupposes he is correct without answering that question. *See Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1, 8 (2003). Thus some (but certainly not all) judges analyzing claims like Petitioner's have concluded that *Mathews* does not provide the proper analytical framework. *E.g.*, *Montoya v. Chamberlain*, 2026 WL 1602930, at *5-6 (W.D. Mo. June 4, 2026); *Cervantes Merino v. Whitmore*, 2026 WL 1034395, at *3-4 (N.D. Iowa Apr. 16, 2026); *see also Bernal v. Frink*, 2026 WL 1804234, at *2 (S.D. Tex. June 23, 2026).

terms, in April 2026, effectively denying him the right to be in the country after that date. And at the point it expired, his status was no different than an alien who had not been granted parole upon arrival. *See Thuraissigiam*, 591 U.S. at 139 ("[A]liens who arrive at ports of entry—*even those paroled elsewhere in the country for years pending removal*—are treated for due process purposes as if stopped at the border." (quotations omitted; emphasis supplied)). In other words, Petitioner was granted a limited liberty interest, which allowed him to be in the country until April 24, 2026—and once that date passed, the liberty granted to him ended by its terms and he was subject to the same laws (and granted the same Due Process rights) as an alien arriving for inspection at the border. And as explained above, those considerations do not grant him a liberty interest allowing him to be in the country.

## III. CONCLUSION

Petitioner was granted permission to enter the country on parole, but his parolee status did not grant him any rights beyond those specified in the grant of parole. Here, the grant of parole expressly provided it would expire on April 24, 2026; therefore, Petitioner's detention after that date does not violate the Constitution. Accordingly, the Petition for Writ of Habeas Corpus is **DENIED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

**DATE**: November 20, 2026